UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARC A. FRESA | : | CIVIL ACTION: |
| Plaintiff | : | **CLASS ACTION COMPLAINT** |
| v. | : | |
| ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES LLC, and ROBINHOOD MARKETS INC. | : | |
| Defendants | : | January 29, 2021 |

## PRELIMINARY STATEMENT

1. Plaintiff brings this action for damages and injunctive relief against Defendants for tampering and interfering with stock trading and investments. Defendants foreclosed small retail investor access to the investment/stock market by removing and/or restricting access to various stocks, and thereafter limiting stock purchases from their online trading platforms including, but not limited to, Gamestop "GME," Blackberry "BB," AMC Entertainment "AMC," Bed Bath and Beyond "BBBY," Express "EXPR," Naked Brand "NAKD," and/or Nokia "NOK." (hereinafter referred to as "blocked stocks").

2. While small retail investors were denied access to said blocked stocks and were prevented from protecting their investments or profiting from blocked stock fluctuation and trending, larger hedge-fund and other non-retail institutional investors continued to enjoy buy and sell privileges.

3.  At all material times, the Defendants were aware that preventing access to the blocked stocks would have a negative economic effect on its customers. Moreover, the Defendants have also benefitted economically from data that they sold to non-retail investors and hedge-funds, thereby advantaging these larger outlets to the detriment of Defendants' smaller retail investors to whom fiduciary and fair dealing duties were owed. The conduct of the Defendants, or any of them, constitutes Breach of Trust, Breach of the Implied Warranty of Good Faith and Fair Dealings and one or more violations of the Connecticut Unfair Trade Practices Act.

## JURISDICTION

4.  This Court has subject matter jurisdiction over this action: (1) under 28 U.S.C. § 1332(a)(1), since there is diversity of citizenship between Plaintiff and Defendants, and the amount in controversy (exclusive of interest and costs) exceeds the sum of seventy five thousand dollars ($75,000.00); and (2) pursuant to 28 U.S.C. § 1332(d)(2) since this action is a Class Action and the aggregate claims of the proposed class(es) exceed $5,000,000.00 excluding costs and interests and the putative class will exceed 100 persons from Connecticut and/or a combination of at least 100 persons from Connecticut and other States.

5.  This Court has personal jurisdiction since Defendants regularly conduct business and avails itself of the market in the State of Connecticut and throughout the entire United States including, but not limited to, by selling, advertising and marketing services to retail investors and/or selling its customer data to Connecticut based investment companies, brokers and/or hedge funds, and otherwise allowing its application to be distributed and downloaded in the State of Connecticut for the purposes

of its platform(s) to be used by Connecticut Citizens to effect retail trading and/or stock investments. The same conduct constitutes sufficient minimum contacts with this State.

## VENUE

6. Venue is proper in the District of Connecticut under U.S.C. § 1391(b), in that claims and causes of action arise in this Jurisdiction and substantial acts and/or omissions which give rise to the claims asserted in this Complaint occurred in the District of Connecticut.

## JURY DEMAND

7. Plaintiff respectfully demands a Trial by Jury pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

8. At all times material hereto, **MARC FRESA** was a citizen of the State of Connecticut.

9. At all times material hereto, Defendant **ROBINHOOD MARKETS INC.** (hereinafter "**RM INC**."), was a corporation duly formed and incorporated under the laws of the State of Delaware with a principal place of business registered and/or located at 85 Willow Road, Menlo Park, California.

10. At all times material hereto, Defendant **ROBINHOOD FINANCIAL LLC** (hereinafter "**RF**") was a corporation duly formed and incorporated under the laws of the State of Delaware with a principal place of business registered and/or located at 85 Willow Road, Menlo Park, California.

11. At all times material hereto, Defendant **RF** was registered with the U.S. Securities & Exchange Commission (hereinafter "SEC") as a "broker-dealer," and was a

wholly owned subsidiary of **RM INC.**.

12. At all times material hereto, **ROBINHOOD SECURITIES, LLC** (hereinafter "**RS**") was a corporation duly formed and incorporated under the laws of the State of Delaware with a principal place of business registered and/or located at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida.

13. At all times material hereto, Defendant **RS** was registered with the SEC as a "broker-dealer," and was a wholly owned subsidiary of **RM INC.**.

14. At all material times **RM INC.**, **RF** and **RS** (collectively referred to hereinafter as "**ROBINHOOD**"), were affiliates engaged in trade or business for the purpose of making a profit and acted individually and/or in concert, one with any one or more of the others.

15. At all material times **ROBINHOOD** was responsible for the acts and/or omissions of its agents, servants, employees and/or other representatives.

## FACTUAL ALLEGATIONS

16. **ROBINHOOD** is an application and/or internet- based brokerage and financial service, where small retail investors can enjoy "commission free" stock trading and investment opportunities.

17. Its website (www.robinhood.com) claims that **ROBINHOOD** is "on a mission to democratize finance for all, and invites prospective clients to use its service to "make unlimited commission-free trades in stocks, ETFs, and options with Robinhood Financial, as well as buy and sell cryptocurrencies with Robinhood Crypto" (https://robinhood.com/us/en/).

18. On its "about us" page at https://robinhood.com/us/en/about-us/, the firm introduces its founders as visionaries focused on building "a financial product that would enable everyone-not just the wealthy—access to financial markets."

19. ROBINHOOD explains the manner in which it generates its own profit at https://robinhood.com/us/en/about-us/how-we-make-money/, where it posts the following explanation and flow chart:



20. Upon information and belief what is described by **ROBINHOOD** is a "payment for order flow" (hereinafter "PFOF") arrangement where **ROBINHOOD** receives fees from electronic market makers for passing along customer orders; essentially, **ROBINHOOD** sends its clients' orders to trading giants and receives small fees in return (the PFOF), and the trading giants then complete the **ROBINHOOD** user's trade generating their own profit.

21. **ROBINHOOD** sells order information to non-retail investors including hedge funds for profit who then use the information to bolster their own trading

strategies.

22. Prior to January 27, 2021, **ROBINHOOD** permitted its clients to use its services and platform to purchase stocks including the aforementioned blocked stocks.

23. Upon information and belief, a popular uprising by day traders and smaller retail investors appears to have caused volatility and massive rises in the value of one or more blocked stocks by January 27, 2021.

24. On or about January 27, 2021, in response to the massive increase in blocked stock prices, **ROBINHOOD** prevented its predominantly small retail investors/customers from using its services and platform to search/research, invest and/or trade one or more of the blocked stocks.

25. **ROBINHOOD** prevented its predominantly small retail investors from using its services and platforms to trade the blocked stocks without prior and/or sufficient notice or warning.

26. On January 28, 2021, the Plaintiff attempted to utilize the Defendants services and platform to execute investment and/or trading of one or more of the blocked stocks but was prevented from doing so due to **ROBINHOOD's** ban on trading the same.

27. Throughout the day on January 28, 2021, the Plaintiff identified multiple opportunities to profit from trading one or more of the blocked stocks in which he was already invested, however, he was prevented from effecting trades/investment using funds in his **ROBINHOOD** account.

28. At all times material hereto, **ROBINHOOD** foreclosed its small retail investors from using its services and platforms without notice and/or other valid legal basis.

29.     Upon information and belief, **ROBINHOOD** intentionally kept its customer base from trading the blocked stocks in order to deflate and/or slow their rise in value.

30.     By completely foreclosing its small retail investors from using its platforms and services to trade and/or invest in the blocked stocks, **ROBINHOOD** has deprived its customers of the ability to profit from continuing investment, protecting their investments and/or otherwise managing existing investments, in manners both promised and advertised by **ROBINHOOD**, and contemplated by users of its services and/or platform.

31.     Upon information and belief, **ROBINHOOD** prevented trading of the blocked stocks on its platforms in order to benefit larger financial institutions to the economic detriment of its own smaller retail investors.

32.     Upon information and belief, **ROBINHOOD** communicated its intent to bar its users from trading or investing in the blocked stocks to one or more institutional traders and/or hedge funds who used the information to their own economic advantage, and who constitute **ROBINSHOOD's** existing or potential institutional investors.

33.     Upon information and belief, **ROBINSHOOD's** aforementioned conduct violates FINRA rule 5310 which compels firm efforts to promptly "execute marketable customer orders."

34.     Upon information and belief, **ROBINSHOOD's** conduct was undertaken to the detriment of the Plaintiff and many other of its users similarly situated.

## CLASS ACITON ALLEGATIONS

35. Plaintiff brings the within claims and causes of action on behalf of himself and pursuant F.R.C.P. 23 permitting class actions on behalf of all other **ROBINHOOD** users in Connecticut and/or elsewhere in the United States, who were intentionally prohibited from investing and/or trading one or more of the aforementioned blocked stocks via **ROBINSHOOD's** application and/or web-based investment/trading platforms.

36. Pursuant to F.R.C.P. 23, the within claims are appropriately brought as a class action.

37. **NUMEROSITY REQUIREMENT:** While the exact size of the proposed Class is unknown, the Plaintiff alleges upon information and belief that members of the proposed class are so numerous that joinder of individual claims would be impractical. Upon further information and belief, ROBINHOOD has ten million (10,000,00) or more subscribers making it likely that thousands of members would constitute the Class, with thousands more likely to constitute various subclasses. Class members would be easily and/or readily identifiable via discovery, advertisement and/or other means.

38. **COMMONALITY REQUIREMENT:** Numerous questions of law and fact are common as between claims of the Plaintiff and the proposed Class and/or sub-class(es), and said questions predominate over those affecting any individual member of the class including, but not limited to:

   (A) whether **ROBINHOOD** breached its agreement(s) with its small retail investors;

   (B) whether **ROBINHOOD** failed to give its users adequate notice of halting blocked stock purchasing/trading;

(C)  whether **ROBINHOOD** breached fiduciary duties to its users;

(D)  whether **ROBINHOOD** communicated its intention to halt blocked stock purchasing/trading, to institutional investor clients and/or prospective clients, prior to halting the same;

(E)  whether **ROBINHOOD** was paid for information about its intention to halt blocked stock trading by any institutional investor clients or prospective clients, in exchange for such information;

(F)  whether **ROBINHOOD's** exercised the requisite duty of care in preventing foreseeable risks of harm to its users, when it intentionally halted blocked stock trading;

(G)  whether and to what extent **ROBINHOOD's** conduct in halting blocked stock trading subordinated the financial interests of its small retail investors to its own, or any other third party including, but not limited to institutional investors who were not prevented from trading blocked stocks;

(H)  whether **ROBINHOOD's** conduct violates FINRA rule 5310 and or any other state or federal securities law or regulation;

(I)  whether **ROBINSHOOD's** conduct violated any state or federal criminal laws;

(J)  whether **ROBINSHOOD's** conduct violated any state or federal licensing requirements;

(K)  whether and to what manner and extent **ROBINHOOD's** conduct in halting and or limiting blocked stock trading should be enjoined;

(L)  whether **ROBINHOOD** conspired with any third party including, but not limited to its existing and/or potential institutional clients to manipulate the market to the detriment of its small retail investors;

(M)  whether **ROBINSHOOD's** conduct in intentionally halting blocked stock trading constitutes a false and deceptive practice under the Connecticut Unfair Trade Practices Act and/or other state or federal consumer protection law;

(N)  whether damages suffered by Class members due to **ROBINHOOD'S** halting and/or limiting blocked stock trading should be awarded and to what extent appropriate damages measures include punitive, exemplary and other heightened statutorily permissible damages;

39. **TYPICALITY REQUIREMENT:** Plaintiff's claims are typical of proposed class members inasmuch as Plaintiff had a user agreement related to financial investment services and trading upon its **ROBINHOOD's** platform, but was not permitted to trade one or more blocked stocks in order to maximize, manage and/or protect his financial investments as a result of **ROBINHOOD's** unlawful and illegal halting of blocked stock trading absent warning and/or reasonable notice of its intention to engage in such conduct.

40. **ADEQUATE REPRESENTATION REQUIREMENT:** Plaintiff is a fair and adequate representative of the Class, and he is represented by competent and experienced litigation counsel who can and will pursue Class litigation vigorously.

41. **PREDOMINANCE AND SUPERIORITY REQUIREMENTS**: Questions of law and/or fact common to Class members predominate over questions affecting individual members given claims and the nature of evidence that might be presented at a trial and the Plaintiffs damages and/or injuries, along with causation and/or other elements of the claims asserted can be readily proven. The Class action is superior and preferable and would serve to provide individual members who might not otherwise be able to pursue and assert individualized claims the opportunity to avail themselves of a remedy that is economically feasible. The Class action will achieve economies of time effort and expense for class members similarly situated in light of anticipated damages suffered by small retail stock investors and is the most fair and efficient means of ensuring a just and efficient adjudication of claims that, if pursued individually, would

undermine judicial economy and risk inconsistent judgments. Given the nature of the claims the Class action is manageable and superior to individual claims.

## FIRST COUNT
### (*Breach of Contract as to all Defendants*)

42. Paragraphs one (1) through forty-one (41) are realleged and incorporated in this **FIRST COUNT** as if the same were set forth fully herein.

43. At all times material to this complaint the Plaintiff used **ROBINHOOD's** services and/or platform for small retail trading, pursuant to a User and/or Customer Agreement drafted by **ROBINHOOD**.

44. In exchange for **ROBINHOOD's** using and/or selling its users' trade information and/or otherwise profiting from users trading upon its platform, the Plaintiff and other similarly situated retail users were permitted to trade upon **ROBINHOOD's** platform free of commissions.

45. At all material times the Plaintiff and others performed their contractual obligations by allowing **ROBINHOOD** to utilize user trade information for profit in the course of executing an otherwise commission free trade on behalf of said users.

46. At all times material hereto the Plaintiff and other **ROBINHOOD** retail investors relied upon access and ability to trade upon **ROBINHOOD's** platform in order to profit from, manage and/or otherwise protect their investments.

47. On or about January 27, 2021, **ROBINHOOD** unilaterally, randomly, abruptly, without notice or warning and absent lawful excuse, authority or permission,

failed its performance obligations to Plaintiff and other users with whom it had User and/or Customer Agreement.

48. **ROBINHOOD's** conduct prevented Plaintiff and other users from executing timely trades and/or investments upon **ROBINHOOD's** trading platform.

49. On January 27, 2021, the Plaintiff's portfolio included one or more of the blocked stocks.

50. On January 27, 2021, the Plaintiff's attempts and/or requests to trade blocked stocks were refused, in spite of **ROBINHOOD's** contractual and other legal obligations to honor such requests.

51. Due to the blocked stock trade ban by **ROBINHOOD**, Plaintiff and other users were unable to further invest, trade, manage and/or otherwise protect or maximize their own economic interests by using the platform they relied upon to make their investments.

52. **ROBINHOOD's** conduct disadvantaged the Plaintiff and other smaller retail investors by failing to permit blocked stock trading on its platform, while other platform customer and institutional investors were not foreclosed from similar trading.

53. **ROBINHOOD's** conduct in halting blocked stock trading on its platform constituted a unilateral and material breach of its User and/or Customer Agreement.

54. At all times material hereto **ROBINHOOD's** breach was intentional and caused foreseeable damages and economic harm to the Plaintiff and other users.

55. As a direct and proximate result of **ROBINHOOD's** breach and failure to perform the Plaintiffs and other users and/or Class members will continue to suffer damages.

## SECOND COUNT
***(Implied Covenant of Good Faith and Fair Dealings:  as against all Defendants)***

1-46.	Paragraphs one (1) through forty-six (46) of the **FIRST COUNT** are realleged and incorporated in this **SECOND COUNT** as if the same were set forth fully herein.

47.	At all times material hereto, **ROBINHOOD** maintained a special and/or confidential broker-client relationship with Plaintiffs, and other users and/or class members from which a duty of good faith and fair dealings arose.

48.	At all times material hereto, the relationship between **ROBINHOOD** and the Plaintiff and other users/class members was characterized as one of unequal bargaining power favoring **ROBINHOOD** who, among other things, controlled all means of trading blocked stocks on its platform, the same giving rise to a duty of good faith and fair dealings.

49.	At all times material hereto, the Plaintiff and other **ROBINHOOD** users traded on **ROBINHOOD's** platform with a reasonable expectation that they could continue to trade blocked stocks and they continued to perform all obligations under the User and/or Customer Agreement.

50.	The Plaintiff and other users or class members were invested in blocked stocks on January 27, 2021 and had a good faith expectation they would be able to trade blocked stocks and/or otherwise manage and protect their investments using **ROBINHOOD's** platform.

51.	At all times material hereto **ROBINHOOD** was obligated to provide trading services and use of its platform to the Plaintiff and other users or class members.

52. **ROBINHOOD's** failure and/or refusal to permit Plaintiff and other users or class members to trade blocked stocks on its platform without warning, unfairly preventing them from managing and protecting their small retail investments in the same.

53. At all material times **ROBINHOOD's** conduct was undertaken intentionally and recklessly in bad faith, inasmuch as it benefitted economically along with other institutional clients and/or potential clients to the economic detriment of the Plaintiff and other smaller retail users and class members, by halting blocked stock trading.

54. At all material times **ROBINHOOD** failed to disclose its own pecuniary interest in halting investments by Plaintiff and other users in blocked stocks.

55. Upon information and belief **ROBINHOOD** disclosed its intention to halt blocked stock trading to other institutional customers and potential customers all to the detriment of the Plaintiff and other users or Class members.

56. Upon information and belief, **ROBINHOOD** failed to comply with FINRA Rule 5310 and/or other state and federal laws and regulations when it halted trading and/or trade requests by Plaintiff and other users or Class members on or before January 27, 2011.

57. The aforementioned conduct by **ROBINHOOD** constitutes a breach of the duty of good faith and fair dealings toward Plaintiff and other users of Class members.

58. As a direct and proximate result of **ROBINHOOD's** breach of the duty of good faith and fair dealings, the Plaintiff and other users or Class Members have and will continue to suffer damages.

## THIRD COUNT
### (*Breach of Fiduciary Duty*)

1-56.    Paragraphs one (1) through fifty-six (56) of the **SECOND COUNT** are realleged and incorporated in this **THIRD COUNT** as if the same were set forth fully herein.

57.    At all times material thereto, **ROBINHOOD's** license and legal authority to provide financial services and/or act as a broker for the Plaintiff and its other users or Class members, imposed upon **ROBINHOOD** a fiduciary duty requiring it to exercise the highest degree of professional integrity and honesty in relation to providing financial services to them.

58.    The aforementioned conduct by **ROBINHOOD** in halting trading and trade requests related to blocked stocks, failure to warn its users of the same, failing to disclose its own pecuniary interests in halting blocked stock trading, failing to allow the Plaintiff and other users or Class members to trade blocked stocks on its platform to permit timely trading and protection and management of their small retail investments, failing to comply with licensing and/or other regulatory, state and/or other federal laws pertaining to financial service providers, disclosing its intention to halt blocked stock trading to institutional customers or potential customers to the financial detriment of the Plaintiff and its user or other Class members, constitutes a breach of fiduciary duty by ROBINHOOD.

59.    As a direct and proximate result of **ROBINHOOD's** breach of the fiduciary duty owed to Plaintiff and other users or Class members, the same have and will continue to suffer damages.

## FOURTH COUNT
(*Negligence*)

1-52.   Paragraphs one (1) through fifty-two (52) of the **FIRST COUNT** are realleged and incorporated in this **FOURTH COUNT** as if the same were set forth fully herein

53-55.   Paragraphs fifty-four (54) through fifty-six (56) of the **SECOND COUNT** are realleged and incorporated in this **FOURTH COUNT** as if the same were set forth fully herein.

56.   In addition to other duties owed to the Plaintiff and other users or Class members, **ROBINSHOOD** owed them a duty of ordinary and reasonable care.

57.   At all times material hereto, **ROBINHOOD** owed Plaintiff and other users or Class members a duty to protect them against foreseeable risks of harm.

58.   At all times material hereto, **ROBINHOOD** owed Plaintiff and other users or Class members a duty to exercise ordinary and reasonable care in providing financial services and permitting stock trading and investments upon its platform.

59.   At all times material hereto, **ROBINHOOD** owed Plaintiff and other users or Class members a duty of care expected from other institutions similarly situated and operating in open and free financial markets in the United States.

60.   **ROBINHOOD** breached its duties of care to Plaintiff and other users or Class members in one or more of the following ways including, but not limited to:

i)   halting trading and trade requests related to blocked stocks on its platform(s);

ii)   failing to provide reasonable forewarning of its intention to halt trading of blocked stocks on its trading platforms;

iii) failing to permit timely trading upon request as required by FINRA Rule 5310 and/or other regulatory and/or state or federal laws;

iv) failing to disclose its own pecuniary interests in halting blocked stock trading;

v) failing to permit reasonable opportunity to trade blocked stocks and otherwise permit management and protection of small retail investments;

vi) failing to prevent economic harm and detriment to its users in favor of actual or potential institutional clients with whom it shared and economic and/or pecuniary interests;

vii) disclosing its intention to halt trading of blocked stocks to institutional investors or potential investors to the detriment of its users; and/or

viii) engaging in conduct falling far below and inconsistent with financial industry norms for brokers and financial service providers in an open and free market.

61. **ROBINHOOD's** conduct was and continues to be a substantial factor in producing economic and/or other losses and damages to the Plaintiff other users and Class members

62. As a direct and proximate result of **ROBINHOOD's** careless and negligent conduct the Plaintiff and other users or Class members have and will continue to suffer economic and/or other losses and damages.

## COUNT FIVE
*(Connecticut Unfair Trade Practices as to all Defendants)*

1-57. Paragraphs one (1) through fifty-seven of **COUNT TWO** are realleged and incorporated into **COUNT FIVE** as if the same were more fully set forth herein.

58-59. Paragraphs fifty-seven (57) and fifty-eight (58) of **COUNT THREE** are realleged and incorporated into **COUNT FIVE** as if the same were more fully set forth herein.

60-64. Paragraphs fifty-six (56) to sixty (60) of **COUNT FOUR** are realleged and incorporated into **COUNT FIVE** as if the same were more fully set forth herein

65. At all relevant times herein, ROBINHOOD was engaged in trades or businesses as those terms are defined in **C.G.S. §42-110(a)**, in the State of Connecticut.

66. Upon information and belief, **ROBINHOOD** failed to register as a Foreign Corporation conducting business in the State of Connecticut contrary to the laws of the State of Connecticut, in spite of having conducted business in the State of Connecticut.

67. The aforesaid conduct, actions and omissions by **ROBINHOOD** including, but not limited to its (1) failure to register as a Foreign Corporation doing business in the State of Connecticut, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealings, (4) breach of fiduciary duty and/or (5) negligence, as set forth elsewhere and specifically in in **COUNTS ONE** through **FOUR** of this Complaint, constitute violations of the Connecticut Unfair Trade Practices Act, C.G.S. §42-110(b).

68. The conduct of the Defendant **SELLERS** violates the Connecticut Unfair Trade Practices Act §42-110(b), because such conduct constitutes unfair and deceptive acts and/or practices in the conduct of a trade, or business, for one or more of the following reasons:

> i) Defendant's acts and/or practices were deceptive, in that they had a tendency and capacity to deceive persons such as the Plaintiff other users or Class members;
>
> ii) Defendants' acts and/or practices violated public policy as it has been established by statute, common law, or otherwise;

iii) Defendants' acts and/or practices were immoral, unethical, oppressive or unscrupulous; and/or

iv) Defendants' acts and/or practices have caused substantial injury to persons such as the Plaintiff other users or Class members.

69. As a direct and proximate result of the deceptive acts and/or practices, **ROBINHOOD** has caused Plaintiffs other users and Class members to suffer damage and distress including, but not limited to, ascertainable loss of money, property, and/or other harm.

70. **ROBINHOOD** has engaged in more than isolated instances of such deceptive business practices causing ascertainable loss to consumers such as the Plaintiff other users or Class members.

71. A copy of this Complaint was delivered to the Connecticut Attorney General.

**WHEREFORE,** the Plaintiff**,** prays this Court grants:

1. Class Certification;
2. Compensatory Damages;
3. Punitive damages;
4. Attorney's fees;
5. Costs of this Action;
6. Punitive damages pursuant to **C.G.S. §42-110g(a)**;
7. Attorney's fees pursuant to **C.G.S. §42-110g(g)**;
8. Prejudgment and post-judgment interest;
9. That this Court permit the service of the Complaint, associated motion papers, and any Court order upon Defendants and their legal representatives by email and FedEx pursuant to Federal Rule of Civil Procedure 4(f)(3); and/or

10. Such other relief as this Honorable Court may deem just and proper.

                              THE PLAINTIFF
                              MARC A FRESA

BY: _____
                              Stephan Seeger, Esq. (19234)
                              Law Offices: Stephen J. Carriero
                              810 Bedford Street, Suite#3
                              Stamford, CT  06901
                               Tel:  (203) 273-5170
                               Fax:  (203) 357-0608
                              Seegerkid2@aol.com